UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

DANNY PENDERGRASS,          )
                                   )
        Petitioner,        )
                                   )
v.                               )         No.  2:14-CV-51-JRG-MCLC
                                   )
CHERRY LINDAMOOD, Warden,  )
                                   )
        Respondent.     )

## MEMORANDUM OPINION

In 2010, Danny Pendergrass ("Petitioner") entered "best interest" guilty pleas[1] in the Sullivan County Criminal Court to a presentment charging him with four counts of child rape, eleven counts of incest, and seven counts of aggravated statutory rape. Upon his convictions for these twenty-two offenses, Petitioner received an effective total sentence of twenty-five years.[2] Petitioner now brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under that state court judgment [Doc. 1].

Warden Cherry Lindamood has filed a response to the petition, arguing that relief is unwarranted with respect to Petitioner's claims and, in support of her arguments, she has filed copies of the state court record [Docs. 10-11, Addenda 1-4]. Petitioner has not replied to the Warden's response, and the time for doing so has lapsed. *See* E.D. Tenn. L.R. 7.1(a). For the

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (permitting guilty pleas without an admission of guilt where a criminal accused concludes that his best interests would be furthered by pleading guilty).

[2] Petitioner's sentences included twenty-five years for each child rape conviction, six years for each incest conviction, and four years for each aggravated statutory rape conviction, with all sentences set concurrently, but consecutively to a federal criminal sentence he was then serving [Doc. 11, Add. No. 1, pp. 18-39, Judgments dated May 6, 2010].

reasons below, this petition will be **DENIED**.

## I.    PROCEDURAL HISTORY

After the trial court sentenced Petitioner, he filed a pro se motion to withdraw his guilty pleas [Doc. 11, Add. 1 pp. 42-44].   The trial court treated the motion as a petition for post-conviction relief.   Petitioner amended the petition and the trial court dismissed the amended pleading.   Petitioner appealed the dismissal of his amended petition to the Tennessee Court of Criminal Appeals ("TCCA") and he, thereafter, filed a second amended petition.   The trial court likewise dismissed the second amended petition.

Meanwhile, Petitioner filed a second pro se petition for post-conviction relief in the trial court, and he concurrently filed in the TCCA a counseled motion to remand the post-conviction petition pending on appeal.   The TCCA granted the motion and remanded the case to the trial court for consolidation of the original petition, amended petition, and second post-conviction petition [*Id.*, Add. 3].   The trial court conducted an evidentiary hearing in the matter and denied post-conviction relief, a decision that the TCCA affirmed on appellate review. *Pendergrass v. State*, No. E2012-01696-CCA-R3PC, 2013 WL 3973799 (Tenn. Crim. App. Aug. 2, 2013), *perm. app. denied* (Tenn. 2014).   State post-conviction proceedings terminated on January 14, 2014, when Tennessee Supreme Court ("TSC") denied Petitioner's application for permission to appeal. *Id.*   There followed this timely § 2254 habeas corpus application.

## II.    FACTUAL BACKGROUND

The factual background is taken from the TCCA's opinion in Petitioner's post-conviction appeal. *See Pendergrass*, 2013 WL 3973799, at *1–5.

In its opinion, the TCCA recounted the proof marshalled against Petitioner, as summarized by the prosecution during Petitioner's guilty plea hearing on May 5, 2010.

According to that summary, the evidence at trial would have included the victim's testimony, in which she would describe specific events, all occurring in Sullivan County, during which Petitioner engaged in vaginal intercourse with her, anal intercourse on one occasion with her, and oral sex performed by the victim on the Petitioner. The proof would have included Petitioner's statement in which he acknowledged the crimes. The prosecution also could have presented testimony by witnesses, documentation, and records to corroborate the victim's testimony and a "timeline that outlined the approximate date, location, and offense associated with each count in the presentment." *Pendergrass*, 2013 WL 3973799, at *1.

During his plea colloquy, Petitioner denied being "threatened, coerced, intimidated, or pressured into accepting the State's plea offer," and agreed that he was entering a best interest plea based on his discussions with trial counsel and his review of the State's evidence and possible sentences. *Pendergrass*, 2013 WL 3973799, at *2. Petitioner stated that he was satisfied with counsel's representation of him.

The backstory to the entry of the guilty pleas is that, two days earlier, Petitioner requested that counsel be relieved as his attorney. At the hearing on his request, Petitioner explained that he believed counsel was overworked, had not "handled [his case] adequately," and had met with him on several occasions, probably spending a total time of an hour and a half with him since January. *Pendergrass*, 2013 WL 3973799, at *2. Petitioner stated that he had received and reviewed the State's discovery response with counsel, that they had first discussed potential defense witnesses on "Thursday or Friday" of the prior week. Petitioner stated that the jail had prohibited him from telephoning counsel but that he was able to contact counsel by phone after the trial court addressed the telephone ban with the jailers.

Trial counsel detailed at the hearing all the efforts he had made on behalf of his client,

which included speaking with Petitioner's mother on several occasions, meeting with Petitioner and discussing discovery, possible witnesses, the corroborating statement Petitioner had given to the police, and his potential sentences, and answering Petitioner's questions. Counsel described the case as "extremely hard" and, as illustrative of that description, pointed to his client's "tremendous" exposure to a lengthy sentence, the anticipated trial testimony by the young female victim, recounting the sexual encounters she had with Petitioner, Petitioner's confession, which Petitioner insisted was incorrect, and his client's reluctance to identify possible witnesses who could testify at the trial set to commence in two days. Petitioner interjected, at this point, that "[t]here ain't [sic] no witnesses," to which counsel responded, "I mean that's where I'm at. There is [sic] none so—". *Pendergrass*, 2013 WL 3973799, at *2. The trial court denied Petitioner's request and counsel continued the representation.

The TCCA then set forth the facts as presented in Petitioner's post-conviction hearing, which followed soon thereafter. Only the facts which are relevant to the claims asserted in this § 2254 petition will be set forth.

At the post-conviction hearing, Petitioner testified that, outside of court, he had discussed his case with trial counsel "probably 20 to 30 minutes," that the jail did not allow him to contact trial counsel by phone, and that counsel provided him with the State's response to discovery. *Pendergrass*, 2013 WL 3973799, at *2. Petitioner testified that he wanted trial counsel to file a motion for an independent medical exam of the victim, but trial counsel did not file the motion. Petitioner stated that he was "under so much distress "when he accepted the plea offer and entered his guilty pleas, that counsel had told him that if he signed the guilty plea form he was not admitting guilt, and that he was uninformed as to how the justice system worked. *Pendergrass*, 2013 WL 3973799, at *2. While Petitioner stated that he "kind of recall[ed]"

answering questions during his plea colloquy, he speculated that he could have done so without realizing what he was answering. *Pendergrass*, 2013 WL 3973799, at *2.

Petitioner also stated that on August 29, 2009, before issuance of the presentment, his wife and the victim visited him and that the victim told him that the District Attorney told her that if she did not testify against him, she would be removed from her mother's custody. This information, so Petitioner testified, led him to enter the guilty pleas involuntarily, out of fear of the threat. The information caused him to feel that he had no choice but to plead guilty, that he was backed up against the wall, and that he could not tell the trial court about his fear during the plea colloquy.

On cross-examination, Petitioner testified that he wrote a letter to the victim's mother, asking her to tell the victim not to testify against him. Likewise, Petitioner wrote the victim a letter asking her to refuse to cooperate with the District Attorney. The letter contained this request: "PS, throw this away after you're done reading it." *Pendergrass*, 2013 WL 3973799, at *2. Petitioner testified, when asked about the postscript that he "just didn't see any need to keeping it." *Pendergrass*, 2013 WL 3973799, at *2.

Petitioner testified that trial counsel told him that the plea offer was for a twenty-five-year sentence and that he believed that counsel "was pushing the plea on [him] instead of going to [trial]." *Pendergrass*, 2013 WL 3973799, at *2. Petitioner also testified that counsel moved to suppress the statement he gave to Officer Adkins, but that counsel did not attack the officer's credibility by inquiring into the reasons for her demotion from her position as a detective, which supposedly resulted from a "criminal investigation." *Pendergrass*, 2013 WL 3973799, at *2.

The victim's mother testified that her pastor told her that if she and the victim did not cooperate with the prosecution, she could lose custody of her daughter. She testified that the

5

District Attorney did not make any such statements to her about losing custody and that, when she visited Petitioner while he was incarcerated in Pennsylvania on unrelated charges, she relayed to him her pastor's comment. She too testified about the letters Petitioner had sent asking her to tell the victim not to testify against him and stated that she gave the letters to the prosecution. Enclosed in one letter was a "statement of retraction," prepared by Petitioner, which he had requested that the victim sign.

Counsel, who was appointed to represent Petitioner, obtained the victim's medical records, through his request for discovery. Based on those records, counsel decided that it was unnecessary to seek an independent medical evaluation of the victim—a matter which he discussed with his client, whom he thought appeared to be cognizant of what was taking place throughout the proceedings. Counsel and Petitioner likewise discussed suppression of Petitioner's statement, in which Petitioner admitted to having sex with the victim, but Petitioner stated that the sexual encounters were consensual and, sometimes, were initiated by the victim.

Counsel testified that he met with Petitioner on several occasions, and that, while most meetings occurred in the holding cell at the courthouse, counsel believed that the length of the meetings was adequate to prepare for what was occurring that day. Counsel also communicated with Petitioner through Petitioner's mother. Counsel did not interview the victim, as he understood that she did not want to talk to him but counsel, instead, reviewed the summary of the victim's testimony with which he had been supplied. Counsel also sought unsuccessfully the suppression of Petitioner's statement, in which Petitioner "admitted doing things." Counsel stated that he was unaware of any witnesses to testify for the defense, that Petitioner did not advise him of any witnesses, and that he advised Petitioner of the potential sentences and possibility of consecutive sentencing.

6

Petitioner was extended an offer of a 25–year sentence, which he first declined. Counsel testified that he was prepared for trial, and that Petitioner agreed to accept the plea offer on the morning of the day the trial was scheduled to begin. Counsel testified that he did not pressure Petitioner to accept the plea offer, that he had explained the advice of rights form to Petitioner prior to the entry of the pleas, and that Petitioner never had said that he was entering guilty pleas out of fear.

## III. DISCUSSION

The petitioner lists two main grounds for relief, with each ground containing several sub-claims [Doc. 1, pp. 5, 7, and 9].[3]

A.    Trial Counsel gave Petitioner ineffective assistance, in that counsel

1.    did not meet with Petitioner to prepare for trial;

2.    did not discuss defenses with Petitioner;

3.    did not adequately represent Petitioner

4.    did not review discovery in sufficient detail with Petitioner;

5.    did not spend sufficient time with Petitioner discussing the case, including possible defenses, and did not discuss trial strategy with Petitioner, but instead, pressed him to accept the guilty pleas;

6.    did not attempt to question Petitioner's wife or her daughter (the victim);

7.    did not file pretrial motions, including a motion for an independent medical examination of the victim to determine whether sexual activity had occurred;

8.    did not request DNA testing to determine whether Petitioner's DNA was present; and

9.    did not succeed in having his statement suppressed, did not prepare Petitioner to testify at the suppression hearing, and did not investigate

---

[3] The Court inserted the letter "A" for Ground One and the letter "B for Ground Two [Doc. 1 pp. 5 and7], but has left intact the numbers Petitioner used in setting forth his sub-claims.

Officer Melanie Adkins's withdrawal from the criminal investigation of the case against Petitioner.

B.   Petitioner's guilty pleas were invalid and were entered involuntarily and unintelligently, in that:

1.   counsel advised Petitioner that he was not pleading guilty by accepting an *Alford* plea;

2.   threats were made to remove Petitioner's daughter from her mother's custody, if the victim did not cooperate and testify against Petitioner; and

3.   counsel did not prepare properly for trial and did not locate witnesses and evidence for the defense, thus, leaving Petitioner with the feeling that he had no choice but to accept the proffered guilty plea.

The Warden argues, in her answer, that Petitioner has pled one sub-claim insufficiently and that federal review of two sub-claims are barred by Petitioner's state procedural defaults. The Warden further argues that the state courts adjudicated all other claims and sub-claims and rendered resulting decisions, which must remain undisturbed, under the deferential review standards set forth in 28 U.S.C. § 2254. This is so, the Warden maintains, because those decisions are neither contrary to or an unreasonable application of well-established Supreme Court precedent, nor an unreasonable determination of the facts presented to the state court.

The Court agrees with Respondent Warden concerning Petitioner's entitlement to habeas corpus relief and, for the reasons which follow, will **DENY** the petition and **DISMISS** this case.

The claims have been organized into different categories for purposes of discussion – insufficiently-pled claims, procedurally defaulted claims, and adjudicated claims.

## A.   Insufficiently-Pled Claims

One of the sub-claims asserted in Petitioner's guilty plea claim, specifically Claim B.3 (part) is that his attorney failed to locate witnesses and evidence before trial. As Respondent correctly points out, the pleading does not identify the critical witnesses or describe the evidence

8

which counsel failed to locate.

A petitioner must state facts that point to a real possibility of constitutional error to be entitled to habeas corpus relief. *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977). A claim that lacks any factual support is conclusory, and it is well settled that conclusory claims fail to state a claim for relief under § 2254. *Lynott v. Sto*ry, 929 F.2d 228, 232 (6th Cir. 1991) (observing that bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation).

Even though Petitioner's sub-claim involving the failure to locate witnesses has no factual support, he asserted in the TCCA during his post-conviction appeal that counsel's communications with him were insufficient to allow counsel adequately to prepare for trial [Doc. 11, Add. 4, Doc. 1 pp.10-12]. There, Petitioner acknowledged that he had advised counsel that he was aware of no witnesses other than himself [*Id.* at 12]—an acknowledgement which the TCCA highlighted in resolving the lack-of-communication claim against Petitioner. *See Pendergrass*, 2013 WL 3973799, at *6 (recounting Petitioner's statement that he knew of no witnesses for trial counsel to call to testify on his behalf).

Whether this claim has been inadequately pled, has been offered in the context of an ineffective assistance issue, or has been advanced as a challenge to the validity of Petitioner's guilty pleas, the record reveals that the part of the sub-claim regarding counsel's failure to locate witnesses is contradicted by Petitioner's own admissions in state court proceedings. *Id.*, 2013 WL 3973799, at *2 (relating that Petitioner stated that he and counsel had discussed potential defense witnesses only on "Thursday or Friday" of the prior week"); *id.* (quoting Petitioner's statement that, "[t]here ain't [sic] no witnesses," when he was asked whether he had witnesses for his defense); Doc. 11, Add. 3, Vol. 2, Post-Conviction Hr'g Tr. p. 42 (agreeing with the prosecutor during his cross-examination of Petitioner that Petitioner "didn't have any witnesses

to call"). Furthermore, during Petitioner's post-conviction appeal, the TCCA pointed out that the trial court accredited counsel's testimony that he discussed with his client "any potential witnesses" and that Petitioner had conceded that counsel "discussed those matters with him." *Pendergrass*, 2013 WL 3973799, at *6.

Thus, to the extent that this claim was resolved in state court, the state court's rejection of the claim involving counsel's failure to locate witnesses who, according to Petitioner, did not exist was not an unreasonable application of the governing legal rules in Supreme Court cases. The first part of this sub-claim provides no basis for habeas corpus relief.

The part of this sub-claim alleging that counsel failed to locate evidence was not raised in the state courts and, hence, there is no predecessor claim offered in state court proceedings from which this Court can glean facts to support the habeas claim. Because Petitioner has not described the evidence that counsel allegedly failed to locate, the Court finds that the claim has been pled inadequately. Accordingly, it will not establish a constitutional violation, whether presented as a shortcoming on the part of counsel or as a basis for attacking Petitioner's guilty pleas.

Thus, Claim B.3 (part) warrants no habeas corpus relief.

**B.      Procedurally Defaulted Claims**

Respondent Warden maintains that the sub-claims regarding counsel's failures to question or interview the victim's mother (Claim A.6 (part)) and to prepare Petitioner for the suppression hearing (Claim A.9 (part)) have been procedurally defaulted and, thus, are now barred from habeas corpus review.

A state prisoner must exhaust all constitutional claims by fully and fairly presenting them to the state courts before a federal court can consider them in a habeas proceeding. 28 U.S.C. §

2254(b)(1)(A), (C). A petitioner bears the burden of proving he has exhausted those remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). To show exhaustion, a petitioner should reference the specific parts of the state court record that discloses that he, in fact, presented his claim to those courts. Exhaustion is complete even if a state court does not address an issue that is presented fairly to it. *Smith v. Digmon*, 434 U.S. 332, 333 (1978) (per curiam).

A petitioner who fails to raise a federal claim first in a state court commits a procedural default, which bars habeas corpus relief unless that petitioner can show cause to excuse his default and prejudice resulting from the alleged constitutional violation. *See Coleman v. Thompson,* 501 U.S. 722, 752-53 (1991). Absent cause and prejudice, a petitioner who shows that he is actually innocent can overcome the procedural hurdle as well. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

As noted, Petitioner did not respond to the Warden's assertion of procedural default, and he, consequently, did not cite to the specific portions of the state court record to show that he presented these claims to the state courts before raising them here. The Court has independently reviewed the state court record and does not find that Petitioner submitted either claim squarely to each level of the state court system for resolution.[4]

There are no remaining state court remedies available to Petitioner, due to the post-

---

[4] Although the Court found nothing in Petitioner's pleadings as submitted in the state court record to show that he actually raised an independent claim that counsel failed to interview the victim's mother, the post-conviction court made some ambiguous statements suggesting that the claim was presented in some fashion [Doc. 11, Add. 3, Vol. 2 pp. 125-26]. Even so, when the issue was submitted on appeal, the claim was phrased as a failure on the part of counsel to approach the victim's mother as a means of obtaining an entrée to interview the victim [*Id.*, Add. 4, Doc. 1 pp. 12-13]. In the TSC, Petitioner changed the claim once again by claiming that counsel failed to interview the victim's mother—not that counsel failed to interview the victim's mother [*Id.*, Add. 4, Doc. 4 p.7]. Therefore, if this claim ever was advanced in the state courts, it was not pursued at each level of state court review as required for exhaustion purposes. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999).

conviction statute of limitations, as well as the State's one-petition rule, *see* Tenn. Code Ann. §

40-30-102(a) and (c).  As previously observed, federal review of a procedurally defaulted claim

is available only where a habeas petitioner can show cause and prejudice.  *Coleman*, 501 U.S. at

732.  Petitioner offers nothing by way of cause or prejudice, and his unexcused procedural

default precludes federal habeas corpus review of Claims A.6 (part) and A.9 (part).

### C. Adjudicated Claims

The remaining grounds were adjudicated in the state courts.  Adjudicated claims are

evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty

Act (AEDPA), codified in 28 U.S.C. § 2241, which instruct a court considering a habeas claim to

defer to any decision by a state court concerning the claim unless the state court's judgment (1)

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or (2)

"resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion

opposite to that reached by the Supreme Court on a question of law or resolves a case differently

on a set of facts which cannot be distinguished materially from those upon which the precedent

was decided.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Under the "unreasonable

application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision

identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies

the principle to the particular facts of the case.  *Id*. at 407.  The habeas court is to determine only

whether the state court's decision is objectively reasonable, not whether, in the habeas court's

view, it is incorrect or wrong.  *Id*. at 411; *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (noting

that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

The AEDPA standard is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court pointedly has observed, "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 781 (2010).

## 1. Ineffective Assistance of Counsel Claims

### a. Governing Legal Rules

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

13

*Id.*

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

In the context of a guilty plea, to prove *Strickland*'s second prong, prejudice, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, *Strickland*, 466 U.S. at 694, and it "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted).

Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Yet, the core inquiry remains "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Finally, petitioners asserting claims of "ineffective assistance of counsel under *Strickland*

14

have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). "[W]hen a federal court reviews an ineffective-assistance claim brought by a state prisoner, the question is not simply whether counsel's actions were reasonable, 'but whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 105). Moreover, because AEDPA applies, this Court's evaluation of the TCCA's decision on the ineffective assistance claims is "'doubly deferential' . . . that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen*, 563 U.S. at 190).

> **b.    Analysis**

> **i.    Trial Preparation**

Petitioner claims that counsel did not meet with him to prepare for trial (Claim A.1); did not discuss defenses with him (Claim A.2); did not adequately represent him (Claim A.3); did not review discovery in sufficient detail with him (Claim A.4); and did not discuss trial strategy with him or spend sufficient time with him discussing the case, including possible defenses, but that counsel, instead, pushed him to accept the guilty pleas (Claim A.5).

In resolving these claims, the TCCA noted that the post-conviction court had accredited trial counsel's testimony at the evidentiary hearing that he met with Petitioner on several occasions, provided him with discovery responses, and discussed with Petitioner the plea offer, the range of punishments, and the weight of the case against him. Petitioner acknowledged that counsel did discuss these things with him. With respect to counsel's alleged failure to discuss defenses, Petitioner testified during the evidentiary hearing that he (Petitioner) did not have time to talk to counsel about defenses due to a lack of access to a telephone, but also stated that he had spent "maybe 20 minutes" discussing defenses [Doc. 11, Add. 3, Vol. 2 pp. 10 and 15]. These

issues were raised in Petitioner's post-conviction appeal under the rubric of a lack of communication and preparation on the part of counsel [*Id.*, Add. 4, Doc. 1 pp. 10-12]. Finding no reason to disturb the trial court's credibility finding in favor of counsel,[5] the TCCA held that Petitioner had failed to establish that counsel's communications with him were insufficient to prepare for trial. *Pendergrass*, 2013 WL 3973799, at *6.

The TCCA applied *Strickland* and *Hill* to conclude that Petitioner failed to prove these claims of ineffective assistance. *Pendergrass*, 2013 WL 3973799, at *6. Thus, because the state court decision is not contrary to *Strickland* and *Hill*, the Court's task is to determine whether the state court's application of these governing precedents to the facts of Petitioner's case was unreasonable. The Court finds that it was not.

As the TCCA pointed out, Petitioner testified at the hearing on his motion to relieve his counsel from the representation that his attorney had discussed these things with him and that he knew of no witnesses that counsel could call on behalf of his defense. It appears that, by virtue of Petitioner's own concessions, he has undercut his own claim and, thus, this Court concludes that the TCCA did not unreasonably apply *Strickland* and *Hill* in determining that Petitioner did not establish that counsel rendered ineffective assistance by failing to prepare adequately for trial. Thus, Claims A.1, A.2, A.3, A.4, and A.5 will not support issuance of the writ.

### ii.     Questioning the Victim

Petitioner maintains that counsel failed to question the victim. When this claim was offered during Petitioner's post-conviction appeal, the TCCA related that counsel had testified at the evidentiary hearing that he understood that the victim did not want to talk to him, that the

---

[5] Credibility findings by a state court are entitled to special deference by this Court. *See Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *see also Rice v. Collins*, 546 U.S. 333, 342 (2006) ("Reasonable minds reviewing the record might disagree about [a petitioner's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

District Attorney's office had relayed the victim's wishes to him, and that the State had supplied him with a summary of the victim's anticipated testimony. *Pendergrass*, 2013 WL 3973799, at *4. The TCCA thereafter found that counsel's performance was not deficient in this regard and that Petitioner had not shown how interviewing the victim would have assisted in his defense. *Pendergrass*, 2013 WL 3973799, at *6.

*Strickland* instructs a reviewing court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689. Here, counsel made what appears to be a strategic decision not to attempt to interview a victim who did not wish to be questioned, but instead, chose to rely on a synopsis of what was anticipated to be her testimony. *See Samatar v. Clarridge*, 225 F. App'x 366, 371 (6th Cir. 2007) (noting that counsel's failure to interview a prosecution witness "may be explained by reasonable trial tactics"). Notably, Petitioner does not suggest what approach counsel should have employed to force the victim to be questioned, especially since the victim's anticipated testimony had been disclosed to him. *See United States v. McGhee*, 495 F. Supp. 2d 1024, 1026 (D.S.D. 2007) (explaining that the need for a pretrial interview was undercut by the fact that defendant had been provided the child victims' statements).

The Supreme Court teaches that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable" but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. This Court finds that the TCCA reasonably decided that counsel's performance was not deficient and that it likewise reasonably determined that there was no prejudice, given the absence of anything to

show that an interview with the victim would have generated useful defense evidence. Petitioner is not entitled to habeas corpus relief on Claim A.6.

### iii.     Pretrial Motions/ DNA Testing

Next, Petitioner asserts that counsel failed to file pretrial motions, specifically motions for an independent medical examination of the victim to determine whether sexual activity had occurred and for a DNA test to determine whether Petitioner's DNA was present on the victim.

When these issues were raised on appeal, the TCCA indicated that counsel had testified at the evidentiary hearing that, in response to his discovery request, he had been furnished with the victim's medical records  and that his review of those records had revealed no basis for requesting a medical examination of the victim. The TCCA pointed to counsel's testimony that he had discussed the issue with Petitioner who appeared to be "well aware of what was going on through the process." *Pendergrass*, 2013 WL 3973799, at *4. Similarly, counsel explained that a DNA test would have been unproductive with respect to the charged crimes, in view of the allegations as to the date those crimes occurred—more than one year earlier. The TCCA concluded that Petitioner had failed to show how a medical exam or a DNA analysis would have changed the outcome of his case.

An attorney may "make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. 691. The Court sees nothing questionable about counsel's decision not to pursue these tests based on his review of the victim's medical records and his conclusion that a DNA test would have produced nothing useful, given that the crimes allegedly occurred more than one year earlier. Nor has Petitioner offered anything to show that the TCCA unreasonably determined that he had not established prejudice from counsel's failure to ask for a medical evaluation or DNA test.

The TCCA's conclusion must remain undisturbed "if there was a reasonable justification for the state court's decision." *Harrington*, 562 U.S. at 109. Since Petitioner has not shown a reasonable probability that, but for counsel's failure to procure the medical evaluation or the DNA test, he would not have pled guilty to those 22 offenses, but would have insisted on standing trial, there is overwhelming justification for the state court's decision. Habeas corpus relief will not be granted with respect to Claim A.8.

### iv.    Suppression Issues

In the last claim in this category, Petitioner asserts that counsel was unable to secure the suppression of a statement he gave to Melanie Adkins, the detective who investigated his case. Petitioner also contends that counsel did not explore the reasons for Officer Adkins's withdrawal from the investigation of Petitioner's criminal case.

As the TCCA explained, Petitioner's statement to Officer Adkins contained an incriminating, detailed description of Petitioner's relationship with the victim, which commenced when she was eleven years of age. Petitioner testified at the evidentiary hearing that he did not understand that he was giving a statement, but that he, instead, viewed his encounter with the officer as being a situation where he answered questions he was asked. Petitioner also testified that parts of the statement were incorrect, that, at the time of the suppression hearing, Officer Adkins had been demoted from her position as a detective, and that he had asked counsel to find out the reasons for the demotion.

In resolving the claim, the TCCA pointed to Petitioner's failure to indicate which portions of his statement were false, to his failure to present proof involving his assertions against Detective Adkins, and to his admission that he signed the statement. Based on these things, the TCCA determined that Petitioner had not established that the suppression motion

would have been granted had counsel performed the additional investigation, which Petitioner suggested should have been performed. The TCCA did not grant Petitioner relief.

To prevail under AEDPA, Petitioner "must show that the Tennessee Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002). The TCCA reasonably determined that Petitioner did not demonstrate that, but for counsel's failure to pursue further investigations, the suppression motion would have succeeded and his statement would have been excluded. The TCCA did not apply *Strickland* to the circumstances of his case in an objectively unreasonable way in finding no prejudice from the claimed shortcoming of counsel. The writ will not issue with respect to Claim A.9 (part).

### 2. Invalid Guilty Pleas

#### a. Governing Legal Rules

In *North Carolina v. Alford*, the Supreme Court explained that the Constitution permits an accused to plead guilty in his best interest, while professing his actual innocence. *Id.*, 400 U.S. 25, 31 (1970). The Supreme Court has further explained that "[a] plea of guilty is more than a confession which admits that the accused did various facts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 237, 242 (1969). Because of the consequences stemming from a guilty plea, a plea-taking court must ascertain that the plea is voluntary and knowing and that it is being proffered with sufficient awareness of the relevant circumstances and the probable and direct consequences of a plea. *Brady v. United States*, 397 U.S. 742, 748–49 (1979). Following the entry of an unconditional plea, a petitioner "may only attack the voluntary and intelligent character" of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

When Petitioner challenged the validity of his best-interest pleas on post-conviction appeal, the TCCA pointed to *Alford* for its holding that the test for a legal plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Pendergrass,* 2013 WL 2013 WL 3973799, at *5 (quoting *Alford*, 400 U.S. at 31). The TCCA also relied on a state court case, *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993), for evaluating the legitimacy of guilty pleas. *Id.*, 2013 WL 2013 WL 3973799, at *5. *Blankenship*, in turn, emphasized that the governing standard for deciding whether a guilty plea is voluntary and intelligent "is a question of federal law," *Blankenship*, 858 S.W.2d at 904 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983)), and the case cited relevant Supreme Court precedents for the components of valid guilty pleas. *Id.* at 903 (noting that a plea taking court must "canvass[] the matter with the accused to make sure he has a full understanding of *what the plea connotes and of its consequences*") (quoting *Boykin*, 395 U.S. at 244) (emphasis in original); *id.* at 904 (observing that a defendant must have notice of the true nature of the offenses) (citing *Marshall*, 459 U.S. at 436); and *id.* at 904-05 (finding that defendant must have full awareness of the direct consequences of the plea) (citing *Brady*, 397 U.S. at 755). The guilty plea law set forth in *Blankenship* consisted of the constitutional principles set forth in the pertinent Supreme Court cases.

Because the TCCA applied the relevant legal rules, its decision is not contrary to clearly established federal law on guilty pleas, as determined by the United States Supreme Court. The question then becomes whether the TCCA unreasonably applied the rules in *Alford* and the Supreme Court cases or unreasonably determined the facts presented in reaching its decision.

### b.     Analysis

Petitioner's assertions to support his invalid-pleas claim are that counsel advised Petitioner that he was not pleading guilty by entering an *Alford* plea and that the State made threats to remove his daughter (the victim) from her mother if she did not cooperate and testify against Petitioner [Doc. 1 p.7].

The TCCA recounted that, during Petitioner's guilty plea hearing, he had stated that counsel had advised him of the potential sentences he could receive if he were to be convicted by a jury of all counts,[6] that he (Petitioner) understood the potential sentences, and the nature of the pleas and understood that he had the absolute right to plead not guilty and proceed to trial, the right to subpoena and cross-examine witnesses, and the right to testify or remain silent. *Pendergrass*, 2013 WL 3973799, at *1. Petitioner also said that no pressure, threats, coercion or intimidation had been used to cause him to accept the plea offer. *Id.*, 2013 WL 3973799, at *1.

The TCCA additionally recounted the testimony given by the victim's mother at the post-conviction hearing, in which she had stated that her pastor was the individual who told her that, if the victim did not cooperate with the prosecution, she could lose custody of her daughter and that the prosecutor had made no such statement to her. *Id.*, 2013 WL 3973799, at *4. The victim's mother also testified that she relayed her pastor's comments to Petitioner, who had sent her letters asking her to tell the victim not to testify against him—letters which she had provided to the prosecutor. *Id.*, 2013 WL 3973799, at *4. Attached to one of the letters, so testified the victim's mother, was a "statement of retraction," which Petitioner had prepared for the victim to sign. *Id.*, 2013 WL 3973799, at *4.

The TCCA determined that the proof showed that Petitioner, through means of his letters to the victim and her mother, had himself urged the victim not to testify. This conclusion

---

[6] Counsel indicated that Petitioner's charges could have netted him a total sentence as high as 194 years or as low as 15 years [Doc. 11, Add. 3, Motion to Relieve Counsel Hr'g p.7].

presumably rests on the reasoning that the claimed coercive event (the threat to terminate his wife's custody of their daughter if the daughter did not testify against Petitioner) is irreconcilable with Petitioner's own efforts to obstruct his daughter's testimony.  It seems obvious that, if the threat had actually been made and carried out, Petitioner's success in his undertaking to prevent the victim from testifying would have led to the exact same result (the termination of that custody), the avoidance of which, he maintains, coerced him into pleading guilty.  The inconsistency of Petitioner's claiming that he was coerced by the threat to remove his daughter from his wife's custody, an event which would have been the byproduct of what he sought so ardently, shows that his claim of coercion is meritless.

With respect to the allegation that counsel advised Petitioner that he was not pleading guilty by entering *Alford* pleas [Doc. 1 p.7], the plea-taking transcript indicates that the trial court advised Petitioner that his form request for acceptance of pleas of guilty reflected that he was entering an "*Alford* or 'best interest' plea" but further explained that an *Alford* plea is "still considered a guilty plea under the law" [Doc. 11, Add. 3, Guilty Plea Hr'g T pp. 6-7].  Petitioner responded that he had signed it and that his attorney had gone over it, that he had no questions, and that he understood what was on the form [*Id.* at 7].  The TCCA concluded that the record amply supported the post-conviction court's finding that Petitioner's guilty pleas had been entered knowingly and voluntarily.  Once again, the TCCA did not grant Petitioner relief.

As the TCCA held, the record establishes that Petitioner entered his best-interest pleas of guilty voluntarily and with knowledge of their attendant consequences.  The Court recognizes that a criminal accused may be persuaded, based on an expected lighter sentence or the compelling nature of the proof amassed against him, that his best interest is served by pleading guilty.  *See Tollett*, 411 U.S. at 268.  Both these reasons are present here. *See Pendergrass*, 2013

WL 3973799, at *2. (agreeing that he was entering best interest pleas based in part on a review of the evidence and possible sentences). Petitioner's plea bargain fixed his prison sentence at a total 25 years, instead of the maximum 194-year sentence he conceivably could have received at trial. The evidence of Petitioner's guilt was overwhelming, as it included strong direct and circumstantial evidence to establish his commission of the crimes.

Furthermore, as the guilty-plea colloquy reflects, Petitioner persisted in entering his *Alford* pleas, knowing that his pleas would be characterized as guilty pleas, since the trial court had so advised him. *See United States v. Jimenez-Dominguez*, 296 F.3d 863, 869 (9th Cir. 2002) (noting the difficulty in probing a petitioner's subjective state of mind and observing that the "the best evidence of his understanding when pleading guilty is found in the record of the [plea] colloquy").

For all these reasons, this Court finds that the TCCA's decision that the *Alford* pleas were constitutionally sound was not an unreasonable application of the clearly established relevant rules in Supreme Court jurisprudence nor an unreasonable determination of the facts submitted to it. *Brady*, 397 U.S. at 755 (noting that guilty pleas entered by a defendant who is fully aware of the direct consequences must stand unless induced by threats). Therefore, writ of habeas corpus is not not warranted with respect to Petitioner's second overarching claim, Claims B.1, B.2, and B.3.

## IV. CONCLUSION

Based on the above analyses, this pro se state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA)

should Petitioner file a notice of appeal.  A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c).  A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).  Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the procedural basis upon which is based the dismissal of certain claims and the substantive law upon which is based the merits dismissal of the remaining claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims.  *Id.*  Because reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will **DENY** issuance of a COA.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER**.


                                                                          *s/J. RONNIE GREER*
                                                                   *UNITED STATES DISTRICT JUDGE*